JON M. SANDS
Federal Public Defender
District of Arizona
250 N. 7th Avenue, Suite 600
Phoenix, Arizona 85007
Telephone: 602-382-2700

CHALET BRAZIEL, FP016
Asst. Federal Public Defender
Attorney for Defendant
chalet_braziel@fd.org

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>vs.<br>Angel Duran,<br>Defendant | Case No. CR-23-1633-PHX-DWL<br>**SENTENCING MEMORANDUM and MOTION FOR DOWNWARD VARIANCE** |

Mr. Duran, by and through undersigned counsel, submits this sentencing memorandum for the Court's consideration in determining an appropriate sentence under the circumstances. Mr. Duran urges the Court to accept his plea agreement and impose a non-custodial sentence.

**A. Performance While on Pre-Trial Release**

Angel is asking this court for a non-custodial sentence, in part because his co-defendant received time considered served (seven days), but also in part because he wants a second chance. He would like an opportunity to demonstrate to this Court that he can be a law-abiding, productive member of the community. Thus far, he has made every effort to do so. At only 24 years old, it seems impossible to convince Angel that he is a young man with plenty of life ahead of him. There is simply no way to convey this to him. He feels the pressures of being a father and

more than anything, wants his children to have what he never did—a sense of stability. The instant matter, as unfortunate as it may be, has provided Angel with an opportunity to begin focusing on meeting his goals in a positive and constructive way.

During the time leading up to his indictment and while on pre-trial release, Angel went from fighting with his girlfriend and attending domestic violence courses, to proposing to her and spending quality time with her and their children regularly. Although, it seems, according to his recent pre-trial violation, that he likes to have a michelada from time to time with dinner, he is no longer a substance user. He has stopped smoking marijuana completely. If there would have been a time to call this into question, it would have been when he lost his mother last May, as adversity tends to be an effective litmus test for people's commitment to remaining clean and sober. Angel's loss was further compounded by the relatively recent loss of his grandmother, two years prior. Nevertheless, he did not turn to substances for comfort during his time of bereavement. Instead, he leaned on family for support. He has found different ways of coping when stressed. Now, when he wants to clear his mind, he goes away to the mountains—sometimes alone, sometimes with family. He has found that being in nature helps keep him calm and grounded.

Angel was also promoted at work and has subsequently secured other more lucrative positions as he attempts to climb the ladder in the construction world. He has managed to join the union and has been aggressively networking to secure growth in his career. He is in the process of obtaining his GED. The development that he is most proud of, however, is closing on his first home. With his knowledge and skill from the construction world, he has managed to renovate the property. Being able to provide not only a home but a legacy that can be handed down to his children has been an immense source of pride for him. With his fiancée by his side,

the two are saving to continue to take advantage of the first-time homeowner's program and purchase a second property in her name. The goal is to have a piece of property to hand down to both of their children.

**B. Social History**

Angel may be motivated and on the right path now, but with his upbringing, he was exposed to circumstances that allowed him to mistakenly believe that the offensive conduct in this matter was not as serious as it really is. Did he know his behavior was wrong? Sure. However, in the neighborhoods he lived in growing up, people using and selling drugs was a given. Violence was a given. It was nothing to see people buying and selling guns from one another—real arms, not just little pistols. Guns were everywhere, you could easily buy them on Facebook. In the liberal gun culture that is Arizona, he never actually saw anyone arrested for buying and trading firearms. Selling drugs, however, he knew was a sure path to prison. In this way, he figured that buying and selling guns could not have been *that* bad. Illegal sure, but he assumed that it was more likely than not a slap on the wrist given Arizona's second amendment culture. Never did he imagine that he would be facing a federal felony.

When everyone around you uses drugs or consumes substances, doing drugs and using mood altering substances does not seem like a big deal. Angel started smoking marijuana at the age of 13. He started drinking and using hard drugs around the age of 16 or 17. He moved around a lot during his youth and bounced around from household to household. From Mexico, to California, to Arizona he found more of the same: drugs, crime, and poverty. For a brief moment he was sent to live with family members in California who lived differently. They showed him how a family could function. Unfortunately, any semblance of stability that he may have gained from this experience was extinguished when his mother lost their

trailer leaving them homeless. Angel was in the 10th grade. His mother was a drug addict. His father was in prison.

The day his mother lost the trailer, was the day that Angel became a "man." Forced to fend for himself, as a teenager, he dropped out of school to find work and never looked back—neither did he stop working. Angel takes pride in his work ethic and the life that he has been able to create for himself and his family. He softly chuckles as he speaks of an assignment at Taiwan Semi-Conductors where he was assigned to the graveyard shift. A fluent Spanish and English speaker, he was surprised to find himself picking up a few Mandarin words at work. "I wish there had been some form of mentorship or guidance for real life growing up," he laments. He explains that you spend all of this time in school, and no one actually teaches you about the importance of investing and managing your money, becoming a homeowner, or how to successfully pursue a career. No one teaches you how to excel in life. No one tells you just how bad things are in your community, that this is not really the norm, that if you do something like this you could destroy your life. "We all know about drugs and violence but this? I simply had no idea that this would lead to this," he explains.

**C. The Need for Deterrence**

When I reviewed the PSR with Angel, I inquired as to his law enforcement contacts and his drug use. Why stop now? What makes this time different? His answer was fairly simple, the danger of being in real trouble or being incarcerated was never actually real to him before. The danger of losing what he had worked for or being separated from his family did not occur to him. Where Angel is from, everyone seems to get arrested at some point or another for something. An arrest did not automatically equal incarceration. Contact with the legal system was not outside of the norm. He never saw himself as an actual criminal or a ne'er-do-well.

Angel saw himself as a young man who liked to party and drink from time to time, hence the DUI and possession charge. He worked hard so he played hard. He did not think much of getting into domestic spats with family because that is what family did. And as for his revoked/suspended license, he absolutely could not miss work. Getting to work was simply impracticable without a car. He assures me that he is taking responsibility and addressing these court fines and fees as he presents me with receipts and documentation to demonstrate the payments he has made thus far.

This time is not only different because jail time hangs in the balance but because his relationship with Kathy is on the line. The couple came to my office to discuss Angel's case. When Kathy learned of what was going on she quietly, acceptingly nodded and thanked me for my time. She then informed Angel after our meeting concluded that this was it. She had had it. She was willing to stand by his side and support him through this process, ONLY IF, he was actually committed to changing and becoming a partner that was truly present for her and their two children. No more sneaking off to smoke weed when he should have been participating in family time. No more staying out late to do recreational drugs and party with friends. According to Angel, Kathy made herself abundantly clear in letting him know "I want someone who is a father to my kids, not someone who is out and about being a fool."

While there is a need for deterrence when imposing a sentence, the defense asserts that Angel has been sufficiently deterred by this experience. It is also well understood that a sentence should impose a sufficient enough sanction that deterrence is communicated to the community as well. Given Angel's conduct while on pre-trial release, the Defense maintains that it is equally important to demonstrate that those who are truly rehabilitated are seen and acknowledged by the Court. In this case, Angel, has demonstrated such rehabilitation and asks that

this Court consider a measure of leniency in order to allow him to maintain the momentum that he has gained while on pre-trial release.

**E. Request for Leniency & Parity**

For Angel, the prospect of spending time in jail away from his family, even if only for a few months is daunting. The issue for Angel, however, is not solely one of spending time in custody, it is the idea that he will forever be branded as a convicted felon. It is about the example and the legacy that he has set and is leaving for his children. He is concerned that a felony will present him with difficulty as he strives for growth in his career. He is worried that if he is taken into custody, his fiancée will be unable to carry the mortgage on their new home. He is troubled by the idea that everything that they have been working so hard to build could be foreclosed on, and it would have all been his fault.

While Angel understands that he is responsible for additional guns that the co-defendant did not sell, and that his prior background has more law enforcement contacts, he nevertheless asks for the same measure of leniency that his co-defendant received. Angel's co-defendant, Mr. Dinkins, had the exact same guideline calculations as Angel, 30 to 37 months (Doc. 48 Sentencing Memo). The United States Probation Office recommended a sentence of 24 months of incarceration followed by three years of supervised release for Mr. Dinkins. This Court ultimately sentenced him to time considered served (seven days). Here, the United States Probation Office recommends 12 months and one day as the appropriate sentence. The PSR author takes into account Mr. Dinkin's sentence of time considered served and declines to recommend a lower sentence based on "differences in their history and conduct." Angel asks this court to consider that there is indeed a difference in their history and conduct. Angel's co-defendant did not have to overcome nearly as many obstacles as Angel did to get to where he is

right now. Angel is currently leading the productive, hardworking, family life, that we wish so many who come into the court system will find, but ultimately never do. He further asks this Court to consider that placing him in custody would only serve as a setback to undo the progress that he has made.

That said, Angel's actions have earned him the recommended sentence if not more. His petition for leniency rests on his actions while on pre-trial release. He asks that the Court allow him to remain out of custody so as not to disturb the stability of his family. Should the Court wish to impose a sentence of incarceration, Angel asks that the Court consider intermittent incarceration on the weekends as a condition of probation pursuant to U.S.S.G. § 5F1.8 and 18 U.S.C. § 3563(b)(10).[1] While admittedly a seldom used condition, this would allow the Court to impose a sentence of incarceration, if deemed necessary, while allowing Angel to maintain his employment and financial footing, making him much less likely to recidivate upon release.

**D. A New Direction**

What is perhaps most frustrating about this offense, is that Angel did not *need* the money. I watched as the light in his eyes dimmed, ever so slightly, when I informed him that this was a federal felony that could not, and would not, be expunged from his record. At $100 per sale, he was only getting so far ahead. The reality of the matter is that between him and his fiancée, a dental assistant, the two of them are able to support their household. The extra $100 that he was bringing in from selling these guns now seems like a ridiculously poor return on his investment. He has now found more creative ways to make his money go further, like shopping

[1] The court may provide, as further conditions of a sentence of probation, to the extent that such conditions are reasonably related to the factors set forth in section 3553(a)(1) and (a)(2) and to the extent that such conditions involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in section 3553(a)(2), that the defendant… remain in the custody of the Bureau of Prisons during nights, weekends, or other intervals of time, totaling no more than the lesser of one year or the term of imprisonment authorized for the offense, during the first year of the term of probation or supervised release. 18 USC 3563(b)(10).

second hand at the local thrift stores to find a jacket in hopes of being presentable for his upcoming sentencing hearing before this Court. He knew that going into debt and charging it made no sense, so his wife proposed looking to see if they could find something of better quality, second-hand.

He understands that the offense in and of itself is one that has or could potentially cost people their lives as these guns are not merely for recreational use. The hands that these guns fall into are prohibited possessors, incapable of making their own purchases and for various good reasons. Angel has managed to become more grounded, and family oriented over the past year. He has been spending more time with his children and his fiancée, taking them on family excursions and spending quality time instead of hanging out with the idle slackers from the neighborhood. He has been more deliberate in reaching out to his father in Mexico and has managed to carve out time to remodel his bathroom. In doing so, he has gifted his father with an actual shower, noting that they were previously washing up with a bucket. He plans to continue doing additional work on his father's home to provide him with a more comfortable living space.

His fiancée who has been more than supportive has made it clear that she is no longer angry, but sad and disappointed as the offensive conduct was senseless behavior that has compromised their family's position. "I can tell that she still looks at me with a little distrust, like has he really changed?" he admits. He shares that he is working every day to prove to her and their children that he is truly committed to them. Angel has underscored that no matter what happens, "I am going to be a man and accept the consequences. I don't need anyone to feel bad for me. I just want the Judge to understand where I come from and to understand that jail is just a place that will set me back."

The lesson in all of this for Angel is that time is indeed precious—too precious to waste destroying his community with crime. There is time for him to

grow a happy, healthy, prosperous family. The idea of wasting even one day of that time, somewhere behind bars, for him, is simply not worth it. He understands that wealthy, prosperous, households are not built overnight. Wealth, he is coming to learn, is not solely based on the amount of money someone has. For some reason he believed that he needed to work on amassing as much money as he could, as quickly as he could. He now knows firsthand, there is no quick and easy money. As he looks at his young family, he also understands that there is no amount of money worth risking his freedom. Under no circumstances is he ever willing to risk time separated from his children and the household that he and his fiancée are building again. What a difference a year makes.

Accordingly, Mr. Duran urges the Court to grant his motion for a downward variance and impose a non-custodial sentence.

Respectfully submitted: February 24, 2025.

JON M. SANDS
Federal Public Defender

*s/Chalet Braziel*
CHALET BRAZIEL
Asst. Federal Public Defender

Copy of the foregoing transmitted
by ECF for filing February 24, 2025, to:

Clerk's Office
United States District Court
Sandra Day O'Connor Courthouse